■ In the Matter of the Claim of DAVID KNOUSE, Appellant, v MIRON MILLSHOE et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [689 NYS2d 266] —Mikoll, J. P. Appeal from a decision of the Workers' Compensation Board, filed June 13, 1997, which ruled, *inter alia,* that claimant voluntarily withdrew from the labor market.

The principal issue on this appeal is whether substantial evidence supports the Workers' Compensation Board's determination that claimant voluntarily withdrew from the labor force and is therefore ineligible for workers' compensation benefits.

Claimant sustained a work-related back injury in September 1987 resulting in a permanent partial disability. He returned to light-duty supervisory employment in October 1988 and continued in that capacity until he ceased working on January 14, 1991. Three days earlier, claimant had been questioned by his employer about missing building materials. On February 15, 1991, he was charged with grand larceny in connection with these thefts, and thereafter pleaded guilty to petit larceny. He was not, however, terminated by the employer. Subsequently, claimant filed for workers' compensation benefits alleging that he was unable to work after January 14, 1991 as a result of the 1987 injury, specifically complaining of pain and the effects of prescription medication.

Following a hearing, in a decision dated February 4, 1992, claimant was awarded compensation for the period January 14, 1991 to May 28, 1991. The employer's workers' compensation insurance carrier did not appeal this decision. In a decision filed March 25, 1992, claimant was awarded compensation for the period May 28, 1991 to March 12, 1992. The carrier then appealed to the Board and the matter was remanded for further development on the issues of voluntary withdrawal from the labor market and causally related disability. The Workers' Compensation Law Judge found, *inter alia*, that claimant had voluntarily removed himself from the labor market since at least May 28, 1991. Both claimant and the carrier appealed to the Board, which affirmed that portion of the decision finding that claimant voluntarily withdrew from the labor market, and modified that portion pertaining to the period January 14, 1991 through May 28, 1991 to reflect 50% causal relation to the 1987 injury. Claimant appeals.

Claimant's principal argument is that the Board's determination that he voluntarily withdrew from the labor market is unsupported by substantial evidence because three physicians, including the carrier's, rendered the opinion that he was totally disabled during the relevant period. While we share the Board's skepticism of the claim based on the timing of claimant's cessation of employment, particularly since he was able to perform his duties for over two years immediately prior thereto, we are more concerned with the paucity of evidence to support the Board's determination given the undisputed medical evidence that claimant was, in fact, totally disabled. We are, therefore, constrained to conclude that the Board's determination must be reversed.

Claimant's treating physician, Gabriel Aguilar, testified that he found claimant totally disabled in December 1990 and February 1991. While the Board based its determination in part upon the fact that Aguilar did not advise claimant to stop working, it appears from his testimony that Aguilar did not realize that claimant was in fact working in December 1990. Claimant testified that in discussions with Aguilar, he was advised to work until he felt he could no longer do so. Claimant's physician, Ravi Ramaswami, found him totally disabled upon examination on May 28, 1991. The carrier's physician, Mary Godesky, examined claimant on April 5, 1991 and found him totally disabled, 50% causally related to the 1987 injury and 50% to a preexisting condition. Claimant's osteopath, Paul Saloky, testified that upon examination in August 1991, he found claimant totally disabled. Although the Board noted that

Saloky testified that claimant would be capable of light work that did not involve heavy lifting, we agree with claimant that when read in the context of his entire testimony, this portion appears most logically to refer to Saloky's opinion of claimant's condition upon examination in 1994. Aside from the two cited portions of the testimony of Aguilar and Saloky, and the fact that claimant did not seek employment after January 14, 1991, the Board cited no other evidentiary support for its determination that claimant voluntarily withdrew from the labor market. As we have previously observed, while the Board is free to selectively credit or reject portions of expert medical testimony, it may not totally reject uncontroverted medical testimony in favor of its own opinion (*see, Matter of Sullivan v Sysco Corp.*, 199 AD2d 849; *Matter of Doersam v Oswego County Dept. of Social Servs.*, 171 AD2d 934, 936, *affd* 80 NY2d 775; *Matter of Smith v Bell Aerospace*, 125 AD2d 140). Implicit in the Board's determination that claimant voluntarily withdrew from the labor market is a finding that he was not totally disabled, a conclusion wholly unsupported by the medical evidence.

Claimant next asserts that the Board erred in apportioning his disability for the period January 14, 1991 to May 28, 1991 as 50% causally related to the 1987 injury. We disagree. "[A]pportionment of a workers' compensation award presents a factual issue for the Board to determine" (*Matter of August v Chromalloy R & T*, 240 AD2d 966, 967, *lv dismissed* 90 NY2d 1007). Substantial evidence supports the Board's apportionment determination. The Board relied upon the testimony of Godesky, the carrier's orthopedic consultant, that 50% of claimant's disability was related to his 1987 injury and 50% was related to a preexisting back condition which disabled claimant for a year and a half in 1980 to 1981. She based this opinion on her review of a myelogram predating the 1987 injury showing a small disc herniation at L-4, L-5, which she compared to a CT scan performed after the 1987 injury showing a small disc herniation at L-4, L-5.

Finally, claimant asserts that he is entitled to have his reduced earnings for the period subsequent to his return to work in May 1993 calculated in accordance with our decision in *Matter of Meisner v United Parcel Serv.* (243 AD2d 128, *lv dismissed* 93 NY2d 848). Given its finding that claimant voluntarily withdrew from the labor market in 1991, the Board did not reach the question of whether or to what extent his alleged reduced earning capacity is causally related to the 1987 injury. We therefore remit the matter to the Board for that purpose.

Mercure, Crew III, Yesawich Jr. and Peters, JJ., concur.

Ordered that the decision is reversed, without costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.